IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02798-RBJ-MEH

REBECCA TRUJILLO,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO,
ROMERO, Deputy, Denver Sheriff Department,
J. ALLEN, Deputy, Denver Sheriff Department,
J. ALLEN, R.N.,
A. PEREZ, R.N.,
V. TOLIVER, R.N.,
DANA WIMBERLY, R.N., and
ALL MEDICAL PROVIDERS IN THE DENVER CITY JAIL INFIRMARY,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is a Motion to Dismiss filed by Defendant City and County of Denver ("Defendant") [filed April 1, 2015; docket #20]. The motion is fully briefed, and the Court finds that oral argument will not assist in the adjudication of the motion. For the following reasons and based on the entire record herein, the Court RECOMMENDS that the Defendant's motion be granted.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and

## BACKGROUND

Plaintiff initiated this lawsuit on October 10, 2014 alleging a violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983 against all Defendants.

I. **Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in her Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff was incarcerated in the jail of the City and County of Denver, Colorado ("City Jail") during 2012 and 2013 to serve a court-ordered sentence. Following an accident in the jail during July 2012, Plaintiff informed several employees of the Denver Sheriff's Department (and possibly employees of the Denver Health and Hospital Authority d/b/a Denver Health Medical Center) that she suffered from extreme pain in her neck and back, causing debilitation and pain in other parts of her body. Defendants transferred Plaintiff permanently to the infirmary at the City Jail. Eventually, Plaintiff underwent an MRI at Denver Health Medical Center to determine the extent of her injuries. Once the MRI was completed, Plaintiff was immediately transported back to the City Jail. She awaited notice of the radiology results and spoke with most of the individual Defendant nurses and Deputy Romero after the MRI. In addition to written kites or medical request forms, Plaintiff made regular and repeated oral complaints and requests to the individual Defendants about her pain and debilitation due to her back and neck injuries, but she was consistently ignored. A different course

---

recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

of treatment was not provided, and the City Jail medical staff continued to focus only on some of Plaintiff's symptoms, leaving her in the infirmary with minimal pain medication until she was released.

Immediately upon Plaintiff's release, family members brought her to Denver Health Medical Center. Staff ordered another MRI, and surgeons immediately offered and then performed surgery for Plaintiff's spinal injuries. Plaintiff's surgeon found, on information and belief, that her injury was exacerbated by a failure to provide surgery at an earlier time. Plaintiff contends she suffered unnecessarily at the City Jail with severe pain and debilitating neurological effects from the untreated spinal injuries.

## II.     Procedural History

Based on these factual allegations, Plaintiff claims the Defendants were deliberately indifferent to her serious medical needs in violation of the Eighth Amendment, and "[t]he City and County of Denver engaged in a policy, practice or custom, including lack of training and supervision, that was a cause of the Constitutional violation." Complaint, ¶ 11, docket #1. Plaintiff seeks recovery for compensatory and punitive damages, costs, and attorney's fees. *Id.* at 4.

Defendant City and County of Denver filed the present motion arguing Plaintiff's constitutional claim should be dismissed against it pursuant to Rule 12(b)(6) because Plaintiff failed to allege that the violation was the result of any municipal policy, as required by the Supreme Court in *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978).

Following the filing of the Defendant's motion, Plaintiff's counsel sought and received leave to withdraw. Thereafter, the Court ordered that the Plaintiff, now proceeding *pro se*, file a written response to the motion on or before June 25, 2015. Docket #40. Rather than file a response, Plaintiff filed a motion seeking clarification of a court order directed to her former counsel. Dockets

##42, 43. The Court held a show cause hearing (directed at Plaintiff's former counsel) on June 30, 2015 at which the Court discussed with Plaintiff the requirement to file a written response to the motion to dismiss despite her *pro se* status. Docket #47. The Court set a deadline of July 10, 2015 for Plaintiff's response. *Id.* Plaintiff timely filed a letter titled, "Opposing Motion to Dismiss," and stated, "I have no legal counsel so I Rebecca Trujillo wish to oppose this motion" and "My rights have been and continue to be violated. ... I write these letters [sic] in hopes that some action will be taken on my behalf." Docket #57.

Defendant replied arguing essentially that Plaintiff's response fails to cure the deficiencies identified in the motion to dismiss.

## LEGAL STANDARDS

### I. Treatment of a *Pro Se* Plaintiff's Filings

The Court recognizes that the Complaint in this matter was filed by the Plaintiff's former counsel; accordingly, it will not afford the Complaint liberal construction pursuant to *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, during briefing in this matter, the Plaintiff has proceeded *pro se* and the Court will interpret Plaintiff's filing pursuant to *Hall*. Notably, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

### II. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference

4

that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## ANALYSIS

Defendant contends the Plaintiff has not plausibly pled her claim for municipal liability under 42 U.S.C. §1983, because she has not sufficiently alleged either an underlying constitutional violation or an official policy that directly caused the claimed constitutional violation.

The Supreme Court recognizes that municipalities and other local government units are "persons" to whom Section 1983 applies. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n. 55 (1978). However, local governments can be liable under Section 1983 "only for their *own* illegal acts." *Connick v. Thompson*, -- U.S. --, 131 S. Ct. 1350, 1359 (2011) (internal quotation and

citations omitted) (emphasis in original). Hence, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Monell*, 436 U.S. at 692). Rather, to prove a Section 1983 claim against a municipality, a plaintiff must demonstrate (1) the existence of a municipal policy or custom, which (2) directly caused the injury alleged. *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). A plaintiff "cannot state a claim for relief under § 1983 by pointing to isolated incidents." *Ketchum v. Denver Police Dep't*, 930 F.2d 33, 1991 WL 35212, at *1 (10th Cir. 1991) (citing *Monell*, 436 U.S. at 694).

In establishing the first requirement, a plaintiff may show a municipal policy or custom in the form of any of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions - and the basis for them - of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoetler v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)) (internal quotations omitted).

Here, Plaintiff alleges Denver "engaged in a policy, practice or custom, including lack of training and supervision, that was the cause of the constitutional violation." Complaint, ¶ 11. The standards for pleading a municipal liability claim are strenuous, and those for asserting a viable failure to train claim particularly so. *See Connick*, 131 S. Ct. at 1359 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). In this context, Plaintiff must allege facts sufficient to suggest that the failure to train "amounts to

deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *See id.* (citing *Canton*, 489 U.S. at 388).

Deliberate indifference is established only "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Id.* at 1360. For example,

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability." Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Id.* Like the plaintiff in *Connick*, the Plaintiff here does not allege a "pattern" of constitutional violations by untrained employees. Rather, she alleges the following regarding the individual Defendants:

> Defendants are believed to be the jail guards or nurses who were directly assigned to care and monitor Ms. Trujillo. They were at all times relevant to the subject matter of the claims in this action employed as a jail employee [sic] by the City and County of Denver (and possibly The Denver Health and Hospital Authority d/b/a The Denver Health Medical Center). The individual defendants are identified in their individual capacity [sic] as government agents acting under color of law.

Complaint, ¶ 7. Defendant Denver argues that, pursuant to Colo. Rev. Stat. § 25-29-103(1), Denver Health Medical Center is a "body corporate and a political subdivision of the state" and not an agency of Denver, nor "subject to administrative direction or control by any department, commission, board, bureau, or agency of" Denver. Motion, docket #20 at 6. Accordingly, Defendant contends the only individual Defendants named in this case that could be under its supervision are Deputy Sheriffs "Romero" and "Allen." The Court notes that neither of these

individuals has been served in this case.[2] Nevertheless, the Court finds the alleged conduct by one or two employees of the Defendant, even taken as true, is insufficient to plausibly state a "pattern" of constitutional violations by untrained employees under *Connick*.

In *Connick*, the Supreme Court discussed *Canton*'s opinion regarding "single-incident" liability saying *Canton* "left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *Connick*, 131 S. Ct. at 1361. The Court explained that the hypothetical scenario posed in *Canton* demonstrated "an obvious need for specific . . . training." *Id.* ("The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations."). But, citing *Canton*, the Court cautioned, "showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability. '[P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct' will not suffice." *Id.* at 1363-64 (citation omitted).

Here, Plaintiff alleges essentially that her complaints of pain and debilitation were ignored, even after she underwent an MRI. However, these allegations do not demonstrate any omissions in a training program or a failure to train municipal employees that are so "patently obvious" as to hold Defendant Denver liable for the alleged constitutional violations.

Moreover, "a municipality [cannot] be held liable for the actions of its employees if those

---

[2]The Court notes that Plaintiff named both "Deputy J. Allen" and "J. Allen, R.N." as Defendants in this case, but in seeking the issuance of summonses, asked only for Nurse Allen. *See* docket #13. Defendant contends that there are "no Denver Sheriff Department deputies with the surname Allen." Docket #20 at 1.

actions do not constitute a violation of a plaintiff's constitutional rights." *Trigalet v. City of Tulsa, Okla.*, 239 F.3d 1150, 1154 (10th Cir. 2001); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of [the behavior] is quite beside the point.") (emphasis in original). "A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 678.

Plaintiff's factual allegations do not identify "Deputy Allen" but she does allege that after the first MRI, she "awaited notice of the radiology results, speaking to most of the individual nurses and Deputy Romero," but they "continued to ignore her obvious and serious medical needs." Docket #1 at 2. Defendant contends these allegations are insufficient to state an individual constitutional violation of the Eighth Amendment.

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). "The objective prong of the deliberate indifference test examines whether the prisoner's medical condition was 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014). The Tenth Circuit established "[a] medical need is considered sufficiently serious to satisfy the objective prong if the condition 'has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 1192-93 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).

The subjective component is met if the Plaintiff demonstrates Defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir. 2006), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755.

Here, the Court agrees with Defendant that Plaintiff fails to plausibly allege the subjective component of an Eighth Amendment claim against Deputy Romero. There is nothing in the

10

allegations demonstrating that Deputy Romero, alleged by the Plaintiff to be a "jail guard," knew s/he faced a substantial risk of harm by "ignoring" Plaintiff's complaints of pain and debilitation while Plaintiff was in the jail infirmary. Nothing reveals that the deputy had the knowledge ascribed to medical personnel or, otherwise, had a duty to provide medical care to the Plaintiff. Further, there is no allegation that Plaintiff complained to Deputy Romero and the deputy failed to alert medical personnel; in fact, Plaintiff alleges she complained directly to nurses in the infirmary about her pain.

Consequently, the Court finds Plaintiff has failed to allege a municipal policy, custom or practice that directly caused a constitutional violation, which is necessary to state a Section 1983 claim against Defendant City and County of Denver. The Court respectfully recommends that the District Court grant Defendant's motion to dismiss the City and County of Denver from this case.

## CONCLUSION

In sum, the Court finds that Plaintiff has failed to state a plausible claim for violation of the Eighth Amendment against Defendant City and County of Denver. Accordingly, based upon the foregoing reasons, the Court respectfully recommends that the Motion to Dismiss filed by Defendant City and County of Denver ("Defendant") [filed April 1, 2015; docket #20] be **granted** and that the Defendant be dismissed from the case.

Respectfully submitted at Denver, Colorado this 31st day of July, 2015.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge