# EXHIBIT CC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
\* \* \*

| | | |
|---|---|---|
| REBECCA TRUJILLO | ) | Deposition of: |
| | ) | |
| Plaintiff, | ) | KENNON TUBBS, M.D. |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY AND COUNTY OF | ) | Civil No. |
| DENVER, COLORADO; | ) | 14-cv-2798-RBJ-MEH |
| ANTHONY PEREZ, RN; | ) | |
| VICTORIA TOLIVER, RN; | ) | |
| DANA WIMBERLY, RN; | ) | |
| all medical providers | ) | |
| in the Denver City | ) | |
| Jail Infirmary, | ) | |
| | ) | |
| Defendants. | ) | |

BE IT REMEMBERED that on Friday,
April 14, 2017, that the deposition of
KENNON TUBBS, M.D., produced as a witness
herein at the instance of the defendants
Anthony Perez, RN; Victoria Toliver, RN;
Dana Wimberly, RN, herein, in the
above-entitled action now pending in the
above-named court, was taken before DEBRA A.
DIBBLE, a Registered Diplomate Reporter and
Certified Realtime Reporter, commencing at
the hour of 9:00 a.m. of said day, at the
offices of Tempest Reporting, 175 S. Main
Street, Suite 710, Salt Lake City, Utah.

\* \* \*

Case 1:14-cv-02798-RBJ-MEH   Document 211-29   Filed 06/26/17   USDC Colorado   Page 2 of
KENNON TUBBS, M.D. - 4/14/2017
Rebecca Trujillo v. City and County of Denver, Colorado, et al.

Page 19

1              So anyone providing healthcare,

2      I would consider a provider of

3      healthcare.

4              **Q.     (BY MR. SINGER)   In your**

5      **experience, do --**

6              **In the jurisdiction, so to**

7      **speak, where you practice medicine, are**

8      **nurses permitted to diagnose?**

9              A.     No.   That is, a -- a nurse is

10     not licensed to diagnose.

11             **Q.     What is the general scope of a**

12     **nurse's practice in correctional care in your**

13     **experience, specifically with regard to**

14     **jails?**

15             A.     So nurses are required to make

16     assessments.   Nursing plans, care plans.   Do

17     vital signs.   Do physical examinations and

18     intake physicals.

19             When patients come in to

20     booking and they get an intake physical

21     examination.

22             They can do assessments, and

23     then report to a physician.   They can obtain

24     laboratory evaluations and do simple

25     laboratory tests like urinalysis, blood

Case 1:14-cv-02798-RBJ-MEH   Document 211-29   Filed 06/26/17   USDC Colorado   Page 3 of
KENNON TUBBS, M.D. - 4/14/2017
Rebecca Trujillo v. City and County of Denver, Colorado, et al.

Page 20

1    draws, IVs, administer medication, follow

2    physician and physician assistants direct

3    medical orders, or take medical records.

4    Transcribe them.

5            I mean, the scope of nursing is

6    vast.  I ask my nurses to do a lot of

7    different things.

8            The one thing I don't ask them

9    to do is diagnose.

10        Q.    **You --**

11        A.    Or prescribe.

12        Q.    **Okay.**

13        A.    The function of a physician is

14   to diagnose and prescribe.  The function of

15   the nurse is to provide care that has been

16   recommended by the medical doctor or a

17   physician assistant.

18        Q.    **You mentioned direct medical**

19   **orders.**

20            **I wonder if there are other**

21   **types of orders that aren't given directly in**

22   **your experience.**

23            MS. SMITH:  Object to the form.

24            THE WITNESS:  I don't

25        understand the question.

Case 1:14-cv-02798-RBJ-MEH   Document 211-29   Filed 06/26/17   USDC Colorado   Page 4 of
KENNON TUBBS, M.D. - 4/14/2017
Rebecca Trujillo v. City and County of Denver, Colorado, et al.

Page 47

1     Q.     And is it the record that's

2   under the name Rebecca Ann Mondragon?

3     A.     Yes.  And that was confusing.

4   But yes, I have reviewed that record.

5     Q.     And is it your understanding

6   that that is plaintiff's record?

7     A.     That is my --

8            MS. SMITH:  Object to

9         foundation and form.

10           THE WITNESS:  That is my

11        understanding.

12           (Whereupon, Exhibit No. 1

13           was marked for identification.)

14     Q.     (BY MR. SINGER)  So we're

15   handing you what's been marked Deposition

16   Exhibit 1.  Is this the record we were just

17   talking about?

18     A.     It's interesting to note in

19   this report --

20     Q.     Oh, I'm sorry.  I'll let you

21   finish if you'd like, but I did have a

22   question pending, which is, is this the

23   record we were just talking about?

24     A.     This is.

25     Q.     Okay.

KENNON TUBBS, M.D. - 4/14/2017
Rebecca Trujillo v. City and County of Denver, Colorado, et al.

1          Q.     Okay.

2          A.     And I don't know why that

3    happened.

4          Q.     Okay.

5          A.     You would have to ask them why

6    they ignored the serious medical need of this

7    patient.

8          Q.     **You're not purporting to know**

9    **what was going through any particular**

10   **provider's head at any given time with**

11   **relation to the circumstances out of which**

12   **this case arises?**

13         A.     Again, whenever I state in my

14   report that I use the medical record to

15   formulate many of my opinions, there's

16   nothing in the medical record that helps me

17   understand what the physicians were thinking

18   at that moment.

19                Both the nursing staff and the

20   doctors do a poor job of documentation of

21   what they were thinking at that time that

22   would help me infer why they were doing what

23   they were doing.

24         Q.     **At the top of page seven,**

25   **there's this statement that Dr. Boyle was**